34 So.2d 589

## ROBINSON v. ROBINSON.

### 8 Div. 401.

Supreme Court of Alabama.

March 25, 1948.

Bradshaw & Barnett, of Florence, for appellant.

Harold T. Pounders, of Florence, for appellee.

BROWN, Justice.

The appellant was divorced from the appellee Hulet Robinson by decree entered in the Law and Equity Court of Lauderdale County on January 31, 1946. It appears that the defendant in that case, appellee here, did not resist the divorce and so far as appears did not contest the awarding of the custody of the minor child James Robinson to the mother. The child is now about two years of age and delicate in health. Since that decree was entered it seems the parties have been having considerable controversy about the

general welfare of the child and the right to see and visit with him. On July 1, 1947, the appellee, the husband, filed this bill, praying that pending the hearing the court commit the child to the custody of complainant's mother, Mrs. A. D. Robinson, under the supervision of the Department of Public Welfare of Lauderdale County, and that upon final hearing that the said child James Robinson be committed to the custody of the said Mrs. A. D. Robinson. After full hearing of the matter in which both parties offered voluminous testimony which was heard ore tenus, the testimony covering more than 150 pages of the record, the court entered the decree from which this appeal is prosecuted committing the minor James Robinson to the custody of the grandmother, Mrs. A. D. Robinson, subject to the strict supervision of the Department of Public Welfare, said department being instructed to keep in close contact with the home and child and to keep the court informed of any adverse conditions likely to affect the well being of said child, the court retaining jurisdiction in the decree over the custody of the child. The complainant, the father, was required to pay into the registry of the court the sum of $30 per month to be expended under the supervision of the department of public welfare for the support of the child and its medical care with the provision that "should this allowance prove to be too much or too little, the said department of public welfare shall so report to the court in order that the amount be changed by proper order of the court." In the final decree the court made the following observations as the basis for the conclusion above stated.

"We have in this Case a child about two years of age whose parents are divorced and the child must be deprived of the constant companionship of at least one of the parents. Immediately upon the marriage of this couple respondent's mother took charge of her daughter's life and laid down conditions prerequisite to the daughter's remaining in her home that finally ended in divorce and respondent returning to her mother's home to live for a short time, after which for some reason, either being driven from home or for some other unexplained reason, respondent was taken by complainant to the home of complainant's brother, then to the home of his sister, then to the home of his mother where, all told, she and the child lived for some two months or more, then they went to the home of Phillips, for another few months and at last secured an apartment of one room with several other families on the premises, on Prospect Street in Florence, Alabama. At this apartment the child was sometimes left with a Mrs. Wilson now separated and divorced, sometimes with a young woman who lived in the house, sometimes under conditions of neglect. The room was not kept in a condition conducive to the good health of the child, too much quarreling, fighting and other excitement prevailed at this apartment for the well being of the child (this being blamed on complainant but the Court finds complainant by far not the total cause).

"Respondent has from time to time worked, during recent weeks leaving the child with her mother, Mrs. Faulkner, who admittedly hates the complainant, father of the child, has shot at him, has threatened to kill him and openly states to the court that if she has anything to do with the handling of the child she will do all in her power to keep the said father from ever seeing the child or the child having anything to do with its father. In the opinion of this Court, those statements of Mrs. Faulkner, coupled with her past and present attitude clearly indicates that any influence she would exert over the child would be detrimental and not to its best interest. There has been nothing stated in this case that reflects on the character of the complainant, father of the child, and he should be permitted to see and visit with the child and that without being killed or shot by the custodian of the child.

"Respondent now contemplates working in the future, possibly in the State of California where she is offered a position. The Court cannot permit the removal of the small child to the State of California. If the respondent remains here and works the Court cannot permit the grandmother, Mrs. Faulkner, to keep the child.

"Both parents should visit the child, it should be taught to love them both, whether they ever decide to live together again and together rear the child or not. They, as has been shown by the testimony in this cause, may both see and visit the child at the home of complainant's mother, Mrs. Velma (A. D. Robinson). Though the testimony in this case disclosed she has in the past undergone an operation, since the hearing she has visited in the Office of the Judge of this Court and the Court has had an opportunity to observe her present physical appearance. She resides near telephones and automobiles and the Court believes the child will be properly cared for in this home. * * *."

After careful consideration of the record in this case, we are not persuaded that the judgment and decree of the trial court should be disturbed The paramount consideration is the welfare of the child and we think it probable that the decree in this case leads to that end.

Affirmed.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.